Celso J. Perez (SBN 304924)
Lee Gelernt*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (646) 905-8935
F: (212) 549-2654
cperez@aclu.org
lgelernt@aclu.org
mtan@aclu.org

*Application for admission pro hac vice forthcoming*

David Loy (SBN 229235)
Sarah Thompson (SBN 323188)
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 232-2121
F: (619) 232-0036
davidloy@aclusandiego.org
sthompson@aclusandiego.org

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Vijayakumar Thuraissigiam,<br><br>    Petitioner,<br><br>v.<br><br>Greg Archambeault, Field Office Director, San Diego Field Office, U.S. Immigration and Customs Enforcement; Kevin K. McAleenan, Acting Secretary of DHS; Mark Morgan, Acting Director, U.S. Immigration and Customs Enforcement; William Barr, Attorney General of the United States; Robert Garcia Jr., Acting Warden, Otay Mesa Detention Center,<br><br>    Respondents. | Case No. '19CV1092 BEN LL<br><br>Hon.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

# INTRODUCTION

Petitioner Vijayakumar Thuraissigiam is a Sri Lankan farmer escaping persecution in his homeland. After being bound, beaten, suffocated, and interrogated by Sri Lankan authorities due to his political and ethnic affiliations, Mr. Thuraissigiam fled to the United States. He entered the country on or around February 17, 2017, was apprehended by immigration authorities, and requested asylum. Since then—*for more than two years*—the government has imprisoned Mr. Thuraissigiam at the Otay Mesa Detention Center in San Diego, while he challenges his expedited removal order. During that time, Mr. Thuraissigiam's mental and physical health has severely deteriorated.

The government has never explained why Mr. Thuraissigiam's prolonged detention is reasonably related to a valid government purpose. U.S. Immigration and Customs Enforcement ("ICE")—the jailing authority—has never made any determination that Mr. Thuraissigiam presents a flight risk that requires his incarceration. Nor could it, in light of Mr. Thuraissigiam's evidence that he has a sponsor with whom he would live, as well as a network of support in the community. ICE likewise never suggested that Mr. Thuraissigiam poses a danger to the community.

Nor has Mr. Thuraissigiam even received the basic due process of a bond hearing before a neutral decision-maker to contest his imprisonment. Mr. Thuraissigiam's sole recourse has been to request a parole review by ICE—his jailer. And although Mr. Thuraissigiam requested release on parole more than a month ago, ICE has yet to even respond to his parole application.

Mr. Thuraissigiam's prolonged detention violates the Due Process Clause of the Fifth Amendment. This Court should order Mr. Thuraissigiam's immediate release because his detention bears no reasonable relation to any government purpose. In the alternative, this Court should order an immediate bond hearing, before this Court or before an immigration judge, where the government must justify that Mr.

Thuraissigiam's continued detention is necessary to prevent his flight or to protect public safety.

Petitioner respectfully alleges, by undersigned counsel, as follows:

## JURISDICTION AND VENUE

1. Petitioner is currently detained in the custody of Respondents at the Otay Mesa Detention Center in San Diego, California.

2. Jurisdiction is proper under 28 U.S.C. §§ 1331, 2241, and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2.

3. Venue is proper in the Southern District of California. Mr. Thuraissigiam is detained under the authority of the ICE San Diego Field Office, and is detained in the Otay Mesa Detention Center, both located in this district. *See* 28 U.S.C. § 1391 (venue proper in judicial district in which a defendant in the action resides, or substantial part of the events giving rise to the claim occurred).

## PARTIES

4. Petitioner Thuraissigiam entered the United States on or about February 17, 2017 seeking asylum, and was apprehended by immigration officers shortly thereafter. He has been held in detention since then, for more than two years.

5. Respondent Greg Archambeault is sued in his official capacity as the San Diego Field Office Director of U.S. Immigration and Customs Enforcement ("ICE"). He is a legal custodian of Petitioner.

6. Respondent Kevin K. McAleenan is sued in his official capacity as the Acting Secretary of the Department of Homeland Security. In this capacity, he directs the U.S. Department of Homeland Security ("DHS") and ICE. Respondent McAleenan has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103 and is a legal custodian of Petitioner.

7. Respondent Mark Morgan is sued in his official capacity as Acting Director of ICE, which is the sub-agency of DHS that is responsible for detaining noncitizens and

that oversees Mr. Thuraissigiam's detention at the Otay Mesa Detention Center. Respondent Morgan is a legal custodian of Petitioner.

8.  Respondent William Barr is sued in his official capacity as the Attorney General of the United States. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Executive Office of Immigration Review, and is a legal custodian of Petitioner.

9.  Respondent Robert Garcia Jr. is sued in his official capacity as the Acting Warden of the Otay Mesa Detention Center. He is a legal custodian of Petitioner.

## FACTUAL BACKGROUND

10.  Mr. Thuraissigiam is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center ("Otay Mesa"). He has been held there for over two years, since February 2017, without a bond hearing or any other individualized determination that his detention is necessary to prevent flight or protect public safety.

**Mr. Thuraissigiam flees Sri Lanka.**

11.  Mr. Thuraissigiam was born in Sri Lanka in 1971, and is a member of Sri Lanka's Tamil ethnic minority. He is married to his wife of 13 years, and has an 11-year-old son.

12.  Mr. Thuraissigiam's childhood and adolescence were marked by the conflict between the government and Tamil separatists. Beginning in the 1980s, a civil war broke out between the two sides. As a result of the conflict, government forces committed numerous atrocities against Sri Lanka's broader Tamil population.

13.  In the 2000s, Mr. Thuraissigiam became involved in Sri Lankan politics, working on behalf of M.K. Shivajilingam, a Tamil candidate in local politics. Mr. Thuraissigiam helped arrange public meetings in support of Mr. Shivajilingam, first in 2004, and then in 2013. As a result of his political activities, government forces targeted Mr. Thuraissigiam.

14. In February 2014, men who identified themselves as government intelligence officers approached Mr. Thuraissigiam at his farm. The men addressed Mr. Thuraissigiam by name, grabbed him, and pushed him into a van waiting outside.

15. In the van, the men bound, beat, and interrogated Mr. Thuraissigiam about his political activities and support for Mr. Shivajilingam. The men took Mr. Thuraissigiam to a house where they further beat him, and asked similar questions about his political activities. They lowered Mr. Thuraissigiam into a well, simulating drowning, threatened him with death, and then suffocated him, causing Mr. Thuraissigiam to lose consciousness.

16. Following this attack, Mr. Thuraissigiam went into hiding, and eventually fled the country in 2016. After a difficult journey through Latin America, he reached the U.S.-Mexico border.

17. Mr. Thuraissigiam entered the United States on February 17, 2017, and was subsequently apprehended by U.S. government officers.

**Mr. Thuraissigiam's removal case**

18. After Mr. Thuraissigiam's initial detention, U.S. immigration officers placed him in expedited removal ("ER") proceedings in accordance with 8 U.S.C. § 1225(b)(1)(A). Pursuant to the statute, immigration officers issue individuals like Mr. Thuraissigiam an ER order, and refer them to an asylum officer ("AO") for a credible fear screening. *Id.*; 8 U.S.C. § 1225(b)(1)(B)(i). The AO interviews the individual to evaluate whether they have a "credible fear of persecution"—meaning whether there is a "significant possibility" the individual could establish eligibility for asylum. 8 U.S.C. § 1225(b)(1)(B)(v). If the individual demonstrates a credible fear, the AO refers them to immigration proceedings for further consideration of the asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). If the AO finds the individual has not demonstrated a credible fear of, the individual has the option of requesting review of the AO decision by an immigration judge ("IJ"). 8 C.F.R. § 208.30(g).

4

19. Credible fear interviews and the IJ "review" are extremely truncated.

20. An AO interviewed Mr. Thuraissigiam for a credible fear determination on March 7, 2017. The AO found Mr. Thuraissigiam credible, but did not find a sufficient nexus between Mr. Thuraissigiam's persecution, and one of the protected asylum grounds. *See* 8 U.S.C. § 1158(b)(1)(B)(i) ("[asylum] applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion *was or will be at least one central reason* for persecuting the applicant") (emphasis added).

21. Mr. Thuraissigiam requested that an IJ review the AO's determination. The IJ too found Mr. Thuraissigiam factually credible, but upheld the AO's decision. Mr. Thuraissigiam requested subsequent reviews by the AO and the IJ, which were denied.

22. On or about October 18, 2017, Mr. Thuraissigiam requested a bond redetermination at the San Diego Immigration Court. The IJ found she had no jurisdiction to hear the case.

23. On January 19, 2018, Mr. Thuraissigiam filed a habeas petition challenging his ER proceedings on statutory and constitutional grounds. Mr. Thuraissigiam alleged a series of violations on the part of the AO and IJ in his case, including translation and communication problems during the proceedings, a failure to consider in country conditions in Sri Lanka, and a failure to consider his traumatized state of mind and his distrust of government authorities during the proceedings.

24. The district court denied the habeas petition on jurisdictional grounds. *Thuraissigiam v. United States Dep't of Homeland Sec.*, 287 F. Supp. 3d 1077, 1083 (S.D. Cal. 2018) (holding that the INA, 8 U.S.C. § 1252(e), barred judicial review of Mr. Thuraissigiam's expedited removal order, and that the absence of judicial review was not unconstitutional under the Suspension Clause).

25. The Ninth Circuit reversed the district court on the jurisdictional question, and remanded to the district court for consideration on the merits. *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097 (9th Cir. 2019).

26. The government has received an extension to file a petition for writ of certiorari in the United States Supreme Court in Mr. Thuraissigiam's case. The petition is currently due on July 5, 2019.

27. In light of the pending appeal and remand—unless this Court grants the instant petition—the government will likely continue to detain Mr. Thuraissigiam for months, if not years: If the Supreme Court grants review, Mr. Thuraissigiam's case will likely be pending for another year before he gets a final decision on the jurisdictional question. And if Mr. Thuraissigiam prevails there (or if the Supreme Court declines review), the case will be remanded to the district court for consideration on the merits. That would lead to another round of briefing and possible appeals on the merits, which could easily prolong the case for years. Meanwhile, DHS would continue to imprison Mr. Thuraissigiam without a bond hearing.

**Mr. Thuraissigiam's two-year confinement in U.S. government custody.**

28. Mr. Thuraissigiam is currently detained at the Otay Mesa Detention Center.

29. As a result of his detention, for more than two years, Mr. Thuraissigiam's mental and physical health has deteriorated considerably. Mr. Thuraissigiam exhibits symptoms of post-traumatic stress disorder ("PTSD"), sustained depression, and anxiety. He has difficulty sleeping and suffers from chronic fatigue, nightmares, and a significant decline in cognitive abilities. He also suffers from flashbacks and obsessive brooding over memories of the trauma he has endured, as well as thoughts of suicide.

30. Mr. Thuraissigiam is unable to receive proper psychological care or community support in detention.

31. On the contrary, Mr. Thuraissigiam's detention has resulted in his almost complete isolation. Mr. Thuraissigiam is a monolingual Tamil speaker. Because no detainees or personnel at Otay Mesa speak Tamil, for over a two-year period Mr. Thuraissigiam has been unable to have meaningful communications with others. Most of his conversations have been limited to brief, weekly calls with family and his attorneys.

**Mr. Thuraissigiam has demonstrated he is not a flight risk or danger to the community.**

32. Mr. Thuraissigiam has filed a parole application with ICE, showing he is not a flight risk or danger to the community.

33. Mr. Thuraissigiam's application demonstrates he has an interest in appearing in any future immigration proceedings because he has a strong asylum case, and is likely to prevail on the merits of his claim. He has already secured an important victory in the Ninth Circuit, and understands that to obtain asylum, he must appear at all future hearings.

34. Mr. Thuraissigiam also enjoys community support to ensure his future court appearances, and his transition into life in the United States. A longtime family friend, Vijayakumar Ramasamy, has agreed to sponsor and house Mr. Thuraissigiam in his home in Staten Island, New York. A Sri Lankan immigrant himself, Mr. Ramasamy understands the challenges Mr. Thuraissigiam will face once released, and is committed to helping him integrate into his community. Mr. Thuraissigiam also has the support of multiple organizations dedicated to helping immigrants adjust to life in the United States, including several that specifically work with members of the Tamil diaspora.

35. As documented in his parole application, Mr. Thuraissigiam has no bona fide criminal history and does not present any other indicia of violence that would lead ICE to conclude he is a danger to the community.

## EXHAUSTION

36. There are no further administrative procedures that Petitioner is required to exhaust.

## LEGAL BACKGROUND

37. Mr. Thuraissigiam is currently challenging his negative credible fear determination.

38.     While his challenge is pending, the government has indefinitely imprisoned Mr. Thuraissigiam pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), which provides that individuals "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id*.

39.     The INA further provides that individuals like Mr. Thuraissigiam may be considered for discretionary release through the "parole" process. 8 U.S.C. § 1182(d)(5)(A). Under the parole statute, the Secretary of Homeland Security[1] may release individuals on parole "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id*.; *see also* 8 C.F.R. 235.3(b)(2)(iii).

40.     DHS officers (i.e. the jailing authorities) conduct parole reviews. There is no administrative review of a decision to deny parole by a neutral decision-maker.

41.     Mr. Thuraissigiam applied for parole over a month ago and has not received a response.

## CLAIMS FOR RELIEF

### Count One

### (Due Process—Right to Release)

54.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

55.     The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V.

---

[1] Although the parole statute refers to "the Attorney General," 8 U.S.C. § 1182(d)(5)(A), the Homeland Security Act of 2002 transferred the "detention and removal" powers of the Attorney General to DHS. Homeland Security Act of 2002, Pub. L. 107-296, § 441, 116 Stat. 2135, 2192 (Nov. 25, 2002) (codified as amended at 6 U.S.C. § 251); *see also* 6 U.S.C. §§ 251, 557.

8

56.   Petitioner is neither a flight risk nor a danger.

57.   Petitioner should be released because his prolonged detention is not reasonably related to a valid government purpose and violates the Due Process Clause.

## Count Two
### (Due Process—Right to Bond Hearing)

58.   All of the foregoing allegations are repeated and realleged as though fully set forth herein.

59.   To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decision-maker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger.

60.   Petitioner's ongoing prolonged detention without a hearing violates due process.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully prays the Court to:

a. Issue a Writ of Habeas Corpus; order Petitioner's immediate release, with appropriate conditions of supervision if necessary, on the grounds that his detention is not reasonably related to any legitimate government purpose.

b. In the alternative, order an immediate bond hearing before this Court or the immigration court where the government bears the burden of showing by clear and convincing evidence that Petitioner's ongoing detention is justified based on a flight risk or dangerousness.

c. Issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment.

d. In the alternative, issue a declaration that Petitioner's ongoing prolonged detention without an individualized hearing violates the Due Process Clause of the Fifth Amendment.

e. Award Petitioner's costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

f. Grant such further relief as the Court deems just and proper.

Dated: June 11, 2019

Respectfully submitted,

David Loy (SBN 229235)
Sarah Thompson (SBN 323188)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 232-2121
F: (619) 232-0036
davidloy@aclusandiego.org
sthompson@aclusandiego.org

*Attorneys for Petitioner*

*/s/Celso J. Perez*
Celso J. Perez (SBN 304924)
Lee Gelernt*
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (646) 905-8935
F: (212) 549-2654
cperez@aclu.org
lgelernt@aclu.org
mtan@aclu.org

*Application for admission pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 11th day of June, 2019, I caused a PDF version of the foregoing document to be electronically transmitted to the Clerk of the Court, using the CM/ECF System for filing.

                                          /s/ Celso J. Perez
                                          Celso J. Perez
                                          Dated: June 11, 2018